**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Joseph Brach*
1350 Broadway, 11th Floor
New York, NY 10018
212-216-8000
David Wander, Esq. (dwander@tarterkrinsky.com)
Jack Manchester, Esq. (jmanchester@tarterkrinsky.com)

**Hearing Date:** May 29, 2026
**Objection Deadline:** May 18, 2026

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In re:

NUSSBAUM LOWINGER LLP, *et al.*[1]

                                        Debtor.
-----------------------------------------------------------------X

Chapter 11

Case No. 26-22383 (SHL)

(Jointly Administered)

**JOSEPH BRACH'S (I) OBJECTION TO ASSIGNEE'S MOTION
(A) TO DISMISS DEBTORS' CHAPTER 11 CASES, (B) TO
EXCUSE ASSIGNEE FROM TURNING OVER ESTATE
PROPERTY, AND (C) FOR COURT TO ABSTAIN FROM
ADJUDICATING BANKRUPTCY CASES; AND (II) JOINDER TO
UST'S MOTION TO APPOINT CHAPTER 11 TRUSTEE**

**TO THE HONORABLE SEAN H. LANE,
UNITED STATES BANKRUPTCY JUDGE:**

Joseph Brach ("Brach"), a creditor, by his attorneys, Tarter Krinsky & Drogin LLP,

submits this: (i) opposition to the motion of ABCMN LLC ("Assignee") (a) to dismiss the

bankruptcy cases of Nussbaum Lowinger LLP and Mark J. Nussbaum and Associates, PLLC

(collectively, the "Debtors") (b) to excuse the Assignee from turning over the Debtors' property

and (c) for  this Court to abstain from adjudicating the Debtors' chapter 11 cases (the "MTD")

---

[1] This case is jointly administered with *In re Mark J. Nussbaum and Associates, PLLC*, Case No. 26-22384.

[ECF No. 24];[2] and (ii) joinder to the motion of the United States Trustee ("UST") for appointment of a Chapter 11 trustee (the "Trustee Motion") [ECF No. 45], and represents and states as follows:

## PRELIMINARY STATEMENT

1.     The Assignee has failed to satisfy the exacting standard for dismissal, especially at this early stage of these Chapter 11 cases. The Assignee has failed to allege, much less establish, two necessary components of the bad faith dismissal analysis: the objective futility of the Debtors' reorganization efforts and dismissal being in the best interests of creditors.

2.     Regarding the objective futility analysis, it is too early to determine if the Debtors will be unable to reorganize through the Chapter 11 process. The Debtors have argued the protections afforded by the automatic stay, coupled with the avoidance powers provided by the Bankruptcy Code, provide the Debtors with the ability to effectively wind down their operations through the Chapter 11 process.

3.     Furthermore, the Assignee failed to establish dismissal, not conversion to Chapter 7, is in the best interests of creditors. By the Assignee's own admission, the assignment for the benefit of creditors has been lingering in state court for nearly a year now, with each application by the Assignee taking months to be heard and resolved by the state court. Simply put, the Debtors' creditors should not be forced to continue waiting in limbo in the hope that the state court proceeding will begin to move forward expeditiously.

4.     The Assignee's remaining arguments are similarly deficient. The assignment agreement between the Assignee and the Debtors permits the Debtors to terminate the assignment by filing for bankruptcy, disproving the Assignee's claimed turnover exemption under § 543 of

---

[2] Filed with the MTD was a declaration of the Assignee's sole member, Sheldon Eisenberger, dated April 28, 2026 (the "Eisenberger Dec.") [ECF No. 24-2]. Any capitalized term not defined herein shall have the meaning assigned to it in the MTD.

the Bankruptcy Code. Regardless, the stalled progress in the state court proceeding, and resulting prejudice to the Debtors' creditors, is a sufficient injustice to require the Assignee to turnover the Debtors' property. Furthermore, the Assignee's abstention claims fails for the same reason dismissal is unwarranted here; the Debtors have a plausible path to orderly liquidate their business through the Chapter 11 process, and the Debtors' creditors should not be forced to continue waiting for the state court proceeding to progress forward.

5.      Accordingly, for the reasons stated herein, Brach respectfully requests the Court deny the Assignee's motion in its entirety.

## **BACKGROUND**

### *Nussbaum Appoints Assignee*

6.      On June 16, 2025, Mark J. Nussbaum ("Nussbaum") caused the Debtors to enter into a *General Assignment for the Benefit of Creditors* with Sheldon Eisenberger of ABCMN LLC, as the assignee (the "Assignment Agreement"). A copy of the Assignment Agreement is annexed as **Exhibit A**.

7.      On June 20, 2025, the Assignee initiated an assignment for the benefit of Debtors' creditors in the Supreme Court of the State of New York, County of New York, styled *In the Matter of the General Assignment for the Benefit of Creditors of: Nussbaum Lowinger LLP and Mark J. Nussbaum and Associates, PLLC to ABCMN LLC*, Index No. 157933/2025 (the "ABC").

### *Assignee's Letter to Administrative Judge*

8.      Eight months later, on February 18, 2026, the Assignee sent a letter to the Honorable Suzanne J. Adams (the Administrative Judge for Civil Matters), formally requesting

the ABC be reassigned to new a judge (the "Re-Assignment Letter") because the ABC was, in effect, stalled in state court.[3] A copy of the Re-Assignment Letter is annexed as **Exhibit B**.

9.      Notably, in the Re-Assignment Letter, the Assignee argued the state court was encountering significant delays, which the Assignee characterized as an "exigency" which needed to be immediately addressed to avoid the "hazards" of further delay in the ABC. *Re-Assignment Letter,* pp. 2-3.

### *Denial of Assignee's Motions*

On April 20, 2026, the state court denied all but one of the pending applications filed by the Assignee (the "State Court Order"). [4] *See ABC,* NYSCEF Doc. No. 92; *see also Re-Assignment Letter*, p. 3.

### *UST's Motion to Appoint Chapter 11 Trustee*

10.      On May 13, 2026, the UST filed the Trustee Motion, arguing the appointment of a Chapter 11 trustee is necessary given both the significant history of gross mismanagement of the Debtors and the apparent conflicts of interest between the Debtors' current chief restructuring officer and the Debtors' former management. *Trustee Motion*, pp. 5-8.

**ARGUMENT**

**POINT I**

**THE DEBTORS' BANKRUPTCY CASES SHOULD NOT BE DISMISSED**

11.      The MTD should be denied because the Assignee has not shown the Debtors' reorganization is objectively futile, a requirement for dismissing a bankruptcy case as a "bad faith"

---

[3] The Assignee had filed several applications that had, at that point, been pending for a significant period time, including motions to: (i) retain a forensic accountant; (ii) confirm a proposed settlement agreement with a third-party who received allegedly fraudulent transfers from the Debtors; and (iii) make an initial distribution to a certain class of creditors.

[4] The Assignee's sole application granted by the ABC court was for the retention of a forensic accountant. Given the recent timing of the court's decision, it is unclear what forensic accounting work, if any, has been done.

filing. Moreover, a conversion to chapter 7 (or the appointment of a chapter 11 trustee) is preferably to a dismissal.

12. Section 1112(b) provides that "the court shall convert a case … or dismiss a case … whichever is in the best interest of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b).

13. Whether a case should be dismissed or converted for cause involves a two-step inquiry: (i) first, the movant must establish cause; then, (ii) the "court must examine whether dismissal or conversion of a case under chapter 7 is in the best interests of the creditors and the estate." *In re BH S & B Holdings, LLC*, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010) (citing 7 Collier on Bankruptcy ¶ 1112.04[6]).

14. To dismiss a petition as a "bad faith" filing, the movant must show "**both** objective futility of the reorganization process **and** subjective bad faith in filing the petition..." *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) (collecting cases) (emphasis in original); *see also In re East End Development, LLC*, 491 B.R. 633, 641 (Bankr. E.D.N.Y. 2013) (citation omitted) ("In the Second Circuit, a petition is subject to dismissal for bad faith if both objective futility of the reorganization process and subjective bad faith in filing the petition are found"). Notably, the Assignee concedes proving both objective futility and subjective bad faith is required to dismiss a petition as a "bad faith" filing. *See MTD*, pp. 11, 15.

15. The burden is on the movant to show, by a preponderance of evidence, that dismissal is warranted. *In re Lizeric Realty Corp.*, 188 B.R. 499, 506 (Bankr. S.D.N.Y. 1995).

16. Here, the MTD should be denied because the Assignee has neither demonstrated the objective futility of the Debtors' reorganization efforts, nor has it demonstrated dismissal, not conversion, is in the best interests of creditors and the estate.

**A. The Debtors' Reorganization is not Objectively Futile**

17.    The Assignee has not proven the Debtors' reorganization is objectively futile.

18.    To establish objective futility, the movant must demonstrate, "…that on the filing date there was no reasonable likelihood the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 227 (2d Cir.1991) (collecting cases).

19.    The question is not whether the Debtor can confirm a plan, but rather whether the Debtor has a means to rehabilitate itself, i.e., to put itself "back in good condition." *In re RCM Glob. Long Term Cap. Appreciation Fund, Ltd.*, 200 B.R. 514, 521 (Bankr. S.D.N.Y. 1996) (internal quotations and citations omitted).

20.    The objective futility prong is an exacting test, requiring a movant to show objective futility by the "strongest evidentiary showing." *Id.* at 520.

21.    Accordingly, "…it is settled that dismissal for bad faith is to be used sparingly to avoid denying bankruptcy relief to statutorily eligible debtors except in extraordinary circumstances." *In re E. End Dev., LLC*, 491 B.R. at 641 (internal quotations and citations omitted).

22.    Notably, courts have described the objective futility prong as the "critical test" of a debtor's bad faith. *In re Loco Realty Corp.*, No. 09-11785 (AJG), 2009 WL 2883050, at *3 (Bankr. S.D.N.Y. June 25, 2009) (quoting *In re 68 W. 127 St., LLC*, 285 B.R. 838, 846 [Bankr. S.D.N.Y. 2002]); *In re Strawbridge*, No. 09-17208-MG, 2010 WL 779267, at *3 (Bankr. S.D.N.Y. Mar. 5, 2010) (citations omitted) (same).

23.    Here, the Assignee has not demonstrated the Debtors' reorganizations are objectively futile.

24.     The Debtors' first day declaration in support of the bankruptcy petition outlined several necessary steps the Debtors intended to take to effectuate a reorganization, including utilizing the Bankruptcy Code's avoidance powers and centralizing the Debtors' various disputes in a single forum. *See Declaration of Ephraim Diamond in Support of Debtor's Chapter 11 Petition*, dated April 16, 2026 (the "First Day Dec.") [ECF No. 5]. That explanation, at this early juncture, should be sufficient to satisfy the objective futility analysis. *See, e.g., In re RCM Glob. Long Term Cap. Appreciation Fund, Ltd.*, 200 B.R. at 524 (citations omitted) ("Given the early stages of this reorganization case, I believe that it is too early to make the determination which [movant] requests…[t]he Debtor should be given the opportunity to propose a plan which can be scrutinized by the parties and this court").

25.     The Assignee forwards two meritless arguments in support of its objective futility argument: (i) there is no business for the Debtors to reorganize (*MTD*, p. 18); and (ii) the Debtors lack the authority, as dissolved entities, to effectuate a reorganization (*Id.* at pp. 26-28). Neither argument is sufficient to carry the Assignee's heavy burden of proof.

26.     *First*, the lack of an ongoing business to reorganize is a red herring. There is nothing impermissible about filing a Chapter 11 petition with the intent to liquidate and wind down a business. *See In re C-TC 9th Ave. P'ship*, 113 F.3d at 1309 (noting "a debtor may conclude Chapter 11 proceedings by liquidating and may even enter them with an intent to liquidate if necessary…"); *see also In re E. End Dev., LLC*, 491 B.R. at 642 ("So long as the liquidating plan serves a valid bankruptcy purpose, which the Debtor's proposed plan does, the intent to liquidate assets in an

orderly process is not evidence of bad faith."); *cf. In re Ionosphere Clubs, Inc.*, 184 B.R. 648, 654 (S.D.N.Y. 1995) (collecting cases holding liquidating Chapter 11's are permissible).[5]

27.    *Second*, the Second Circuit has held a dissolved entity can file for Chapter 11 to wind down its business, making the Assignee's dissolution arguments inapposite. *See In re Cedar Tide Corp.*, 859 F.2d 1127, 1131-1133 (2d Cir. 1988) ("According to [movant], a dissolved corporation is not an entity which may seek reorganization under Chapter 11. We disagree.").

28.    Accordingly, the MTD should be denied because the Assignee has not demonstrated the Debtors' reorganization is objectively futile.

**B.  Conversion, not Dismissal, is the Appropriate Remedy**

29.    Even assuming, arguendo, the Assignee can establish the Debtors' petitions were filed in bad faith, conversion (or the appointment of a chapter 11 trustee), not dismissal, is the appropriate remedy.

30.    Once "cause" is shown under §1112(b), the remaining question is whether conversion or dismissal is the appropriate remedy. *In re Babayoff*, 445 B.R. 64, 81 (Bankr. E.D.N.Y. 2011). Conversion is generally preferable to dismissal as, "[c]onversion supports the Bankruptcy Code policy of vigorous maximization of the value of the economic enterprise." *Id.* at 82 (citing *In re Staff Inv. Co.*, 146 B.R. 256, 261 (Bankr.E.D.Ca.1992)) (quotations omitted).

---

[5] The Assignee's sole citation on this issue, *In re Taberna Preferred Funding IV, Ltd.*, 594 B.R. 576 (Bankr. S.D.N.Y. 2018), is plainly distinguishable because it involved an involuntary, liquidating Chapter 11 petition, which lead the court to dismiss the involuntary petition as a bad faith attempt by the petitioning creditors to take control of a defunct business. *Id.* at 604-608.

31.     Specifically, conversion is warranted if "[a] balancing of the best interests of creditors and the estate convinces the Court that conversion to Chapter 7 is appropriate." *In re Calascibetta*, No. BR 19-20558-PRW, 2020 WL 260992, at *3 (Bankr. W.D.N.Y. Jan. 16, 2020).

32.     The 'best interest of the estate' inquiry is not purely financial, as "[v]alue also may be created where, by converting the case, an orderly liquidation of the debtor's assets will occur and a prompt conclusion to the bankruptcy process may be anticipated." *In re Babayoff*, 445 B.R. at 82.

33.     Here, conversion is preferable to dismissal because it would allow the Debtors' disparate disputes with their various creditors to be centralized in the bankruptcy forum. Importantly, these Debtors filed for bankruptcy protection specifically to centralize and streamline the various disputes with the Debtors' creditors. *First Day Dec.*, ¶ 24.  Centralizing those disputes in the bankruptcy forum is in the best interest of creditors, and the estate, as it creates an efficient means to resolve the Debtor's pending disputes with creditors and, ultimately, allow for the orderly liquidation of the Debtor's assets. *See In re Babayoff*, 445 B.R. at 82 (citations omitted); *In re Tuscan Sun Ristorante, Inc.*, No. 8-10-73391-AST, 2010 WL 4929444, at *5 (Bankr. E.D.N.Y. Nov. 30, 2010) (holding conversion was warranted because creditors benefit from "the centralized forum bankruptcy provides to collect and disburse available assets."); *In re Westhampton Coachworks, Ltd.*, No. 09-73008-AST, 2010 WL 5348422, at *7 (Bankr. E.D.N.Y. Dec. 21, 2010) ("[U]tilization of the centralized forum bankruptcy provides to collect and disburse available assets is in the best interest of creditors."); *see also In re Aurora Memory Care, LLC*, 589 B.R. 631, 643 (Bankr. N.D. Ill. 2018) (citations and internal quotations omitted) ("creditors are generally best served by the course of action that results in the largest number of them being paid the largest amount of money in the shortest amount of time.").

34.     Furthermore, conversion is preferable to dismissal as a disinterested Chapter 7 trustee would be able to use the protections, and powers, afforded to it by the Bankruptcy Code to maximize creditor recoveries in each of these bankruptcy cases. *See In re Nogin Com. LLC,* 670 B.R. 711, 731 (Bankr. S.D.N.Y. 2025) ("A bankruptcy proceeding, as noted, would offer transparency, the protection of a nationwide automatic stay, as well as the appointment of an independent fiduciary with the ability to conduct service unconstrained by the jurisdictional limits of a New York state court."); *see also In re Grigoli*, 151 B.R. 314, 322 (Bankr. E.D.N.Y. 1993) (holding ability to utilize avoidance powers to increase creditor recoveries is grounds for keeping case in Chapter 7).

35.     Notably, the MTD *does not even allege* that dismissal is preferable to conversion, further disproving the Assignee's entitlement to dismissal here.

36.     Accordingly, if the Court determines the Debtors' chapter 11 petitions were filed in bad faith, then these bankruptcy cases should be converted to Chapter 7 (or a chapter 1 trustee appointed, and not dismissed.

## POINT II

### <u>THE ASSIGNEE MUST TURNOVER THE DEBTORS' PROPERTY</u>

37.     The Assignee is required to turnover the Debtors' property because the Assignment Agreement is terminated and, regardless, permitting the Assignee to retain the Debtors' property would prejudice creditors.

38.     Pursuant to § 543(b), any custodian in possession of estate property as of the petition date is required to turnover such property to the debtor. *Id.* An exception to that rule, however, is contained in § 543(d)(2), which excuses an assignee in an assignment for the benefit of creditors from that turnover requirement if: (i) the assignee received the property more than one

hundred and twenty (120) days before the petition date; and (ii) retention of the property by the assignee would not result in "fraud or injustice." *Id.*

39.     The Assignee bears the burden of proof to demonstrate its exempted from § 543's turnover requirement. *See In re Novus Structures, Inc.*, 653 B.R. 429, 439 (Bankr. N.D. Ill. 2023) (collecting cases); *see also In re Packard Square LLC*, 575 B.R. 768, 778 (Bankr. E.D. Mich. 2017) (citations and internal quotations omitted) ("A party seeking such relief has the burden of establishing by a preponderance of the evidence that the best interests of the creditors…are served by permitting a custodian to retain control of the estate.").

40.     Here, the Assignee is required to turnover the Debtors' property because: (i) the ABC has been terminated; and, regardless, (ii) turnover is necessary to protect the Debtors' creditors.

41.     *First*, the Debtors have effectively terminated the ABC, nullifying the Assignee's ability to utilize § 543(d)(2) to retain the Debtors' property. The plain text of § 543(d)(2) is clear; the exemption only applies if the custodian is *currently* an assignee in an assignment for the benefit of creditors. Here, the Debtors notified the Assignee that, pursuant to Section 16 of the Assignment Agreement, the ABC was terminated by virtue of the Debtors' bankruptcy filings. *See Assignment Agreement*, p. 9. Accordingly, the Assignee no longer is entitled to continue pursuing the ABC and, therefore, is unable to claim the § 543(d)(2) exception to the turnover requirement.

42.     The Assignee's argument to the contrary, that the Debtors cannot terminate the Assignment Agreement at will, is unavailing. It is axiomatic that an assignee's powers arise contractually; the assignment agreement defines the scope of the assignee's rights. *See In re Lewis*, 81 N.Y. 421 (1880) ("The assignee derives all his power from the assignment, which is both the guide and measure of his duty. Beyond that, or outside of its terms, he is powerless and without

11

authority."); *see also Johnson v. Lasser*, 159 Misc. 346, 347, 289 N.Y.S. 16, 17 (Sup. Ct., Albany County, 1936) (citation omitted) ("The measure of the powers of the assignee, however, is the assignment itself."). Section 16 of the Assignment Agreement grants the Debtors the right to terminate the Assignment Agreement if the Debtors file for bankruptcy. *Assignment Agreement*, p. 9. Accordingly, the Debtors were within their rights to terminate the Assignment Agreement and, resultingly, the Assignee is no longer entitled to refuse turnover under § 543(d)(2).

43. *Second*, permitting the Assignee to retain estate property would result in severe prejudice for the Debtors' creditors, which is sufficient to reject the Assignee's turnover refusal under § 543(d)(2). As discussed above, the Assignee has not been able to significantly progress ABC since its inception. Simply put, that is sufficient to require the Assignee to turnover the Debtors' property. *See, e.g., In re Nogin Com. LLC*, 670 B.R. at 731 ("The Court is concerned whether the Assignment Proceeding can sufficiently protect the interests of the creditor community.").

44. Accordingly, the Assignee's request to be exempt from turning over the Debtor's property should be denied.

## POINT III

## ABSTENTION IS NOT WARRANTED

45. Section 305(a)(1) provides the court may abstain from hearing a case if "the interests of creditors and the debtor would be better served by such dismissal or suspension." 11 U.S.C. § 305(a)(1). Clearly, in this case, the creditor and debtor interests do not support abstention.

46. "Granting an abstention motion pursuant to § 305(a)(1) requires more than a simple balancing of harm to the debtor and creditors; rather, the interests of *both* the debtor and its

creditors must be served by granting the requested relief." *In re Monitor Single Lift I, Ltd.*, 381

B.R. 455, 462 (Bankr. S.D.N.Y. 2008) (citations omitted) (emphasis added).

47.    Abstention, however, "is an extraordinary remedy that should be used sparingly

and not as a substitute for a motion to dismiss under other sections of the Bankruptcy Code." *In re*

*Schur Mgmt. Co., Ltd.*, 323 B.R. 123, 129 (Bankr. S.D.N.Y. 2005) (internal quotations and

citations omitted).

48.    The movant bears the burden of proving both the debtor and its creditors would

benefit from abstention. *In re Monitor Single Lift I, Ltd.*, 381 B.R. at 463.

49.    While the Assignee correctly states the traditional seven-factor test for determining

if abstention is appropriate,[6] courts generally look to the first factor, the economy and efficiency

of administration, as "a primary consideration." *In re RCM Glob. Long Term Cap. Appreciation*

*Fund, Ltd.*, 200 B.R. at 525 (citing *In re Fitzgerald Group*, 38 B.R. 16, 18 [Bankr.S.D.N.Y.1983]).

50.    Notably, courts have rejected motions to abstain in favor of assignments for the

benefit of creditors when the state court proceedings have stalled. See, e.g., In re Nogin Com. LLC,

670 B.R. at 733 (denying request to abstain in favor of assignment for the benefit of creditors. As

the *Nogin* court explained, the bankruptcy forum provides an efficient and equitable forum for

addressing claims which have stalled in an assignment for the benefit of creditors:

> [T]he Court finds that abstention under section 305(a) is not
> warranted. Specifically, the Court can offer an efficient means for
> addressing the claims of the Alleged Debtor's estate (factor 1) in a
> just and equitable fashion (factor 3). Indeed, the Court has already
> indicated that, among other things, a bankruptcy's nationwide

---

[6] The seven factors are: "(1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought." *MTD*, p. 13 (citations omitted).

13

automatic stay, which is unavailable in an assignment for the benefit of creditors under New York law, can aid in preserving and maximizing value for the Alleged Debtor's estate and its creditors. Moreover, while the Assignment Proceeding is already pending in state court and can offer an alternative means of distribution of assets, it is unclear that the Assignee has sufficiently accounted for the interests of all creditors to do so in an equitable manner (factors 2 and 4)…[g]iven that nothing substantial has occurred in the Assignment Proceeding to date, it is not the case that the Assignment Proceeding has gone so far that it would be costly and time consuming to "start afresh" here (factor 6.)

*Id.*

51.     Those same considerations warrant denying the Assignee's abstention request here. The Debtors require the benefit of a nationwide automatic stay, and a central forum for resolving all the Debtors' disparate disputes, to effectuate its orderly liquidation. There has also been an indisputable lack of progress in the ABC; the Debtors' creditors should not be forced to wait in limbo in the hopes the Assignee can begin making significant progress in moving the ABC towards a resolution. Furthermore, the ability for a Chapter 11, or 7, trustee to utilize its avoidance powers (coupled with the trustee's indisputable ability to get applications for things such as forensic accountants quickly approved by this Court) clearly militates in favor of resolving the Debtors' financial distress in the bankruptcy forum.

52.     Accordingly, abstention is unwarranted here as creditors' interests are best served by keeping these cases in bankruptcy.

**POINT IV**

**A CHAPTER 11 TRUSTEE SHOULD BE APPOINTED**

53.     Brach joins the UST's Trustee Motion, largely for the reasons discussed above.

54.     As the UST correctly notes, appointment of a Chapter 11 trustee is warranted if: (i) the debtor is guilty of misconduct, including fraud, dishonesty, incompetence, and gross mismanagement (*Trustee Motion*, pp. 5-6); and (ii) appointing a Chapter 11 trustee is in the best

14

interest of creditors (*Id.* at p. 7). Both those factors are satisfied here, which militates strongly in favor of appointing a Chapter 11 trustee.

55.     *First*, the Debtor is indisputably guilty of sufficient misconduct to warrant appointing a Chapter 11 trustee. Pursuant to § 1104(1) of the Bankruptcy Code, appointment of a Chapter 11 trustee is mandatory if the debtor is guilty of fraud, dishonesty, incompetence, and gross mismanagement. *Id.* Each of those factors is satisfied here. The Debtors' filings were necessitated by the fraudulent conduct committed by, and through, the Debtors. Furthermore, the Debtors have admitted to having a history of financial dishonesty and inaccurate reporting. Simply put, the Debtors filings arise from their repeated failures to satisfy the most basic financial reporting requirements, which militates strongly in favor of appointing a Chapter 11 trustee.

56.     *Second*, appointment of a Chapter 11 trustee is in the best interests of creditors. As the UST correctly notes, it appears the chief restructuring officer appointed by the Debtors has familial ties to the Debtors' former management, raising serious concerns about potential conflicts of interest between the CRO and the Debtors' creditors. Notably, similar conflicts of interest concerns regarding the CRO's appointment. *MTD*, pp. 4-6.

57.     Accordingly, while this case is properly adjudicated in the bankruptcy forum, Brach respectfully joins the UST's position that a Chapter 11 trustee is necessary to insure these bankruptcy cases are moved forward appropriately.

**WHEREFORE,** Brach respectfully requests the MTD be denied its entirety or, alternatively, if the Court finds cause for dismissal or conversion, these cases should be converted to Chapter 7, rather than dismissed, or, alternatively, a chapter 11 trustee should be appointed.

15

Dated: New York, New York
      May 18, 2026

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Joseph Brach*


By: /s/ Jack Manchester
      Jack Manchester, Esq.
David Wander, Esq.
1350 Broadway, 11th Fl.
New York, NY 10018
(212) 216-8000
dwander@tarterkrinsky.com
jmanchester@tarterkrinsky.com