# EXHIBIT A

## GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORS

This GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORS OF NUSSBAUM LOWINGER LLP and MARK J. NUSSBAUM AND ASSOCIATES, PLLC (the "Assignment" or "Agreement") is made by and between Nussbaum Lowinger LLP and Mark J. Nussbaum and Associates, PLLC (hereinafter collectively referred to as "Assignor,"), each with an address at 225 Broadway, 36th Floor, New York, New York and Sheldon Eisenberger, Esq. ("Assignee"), with an address at 7 Times Square, New York, New York, hereinafter referred to as "Assignee," and various creditors of the Assignor who, within five business days of the execution of this Assignment, execute and deliver to the parties a joinder ("Joinder") in the form annexed as **Exhibit 1**.

### WITNESSETH:

WHEREAS, Assignor is in the business of providing legal services, is indebted to various persons, corporations, and other entities (defined as "Creditors" herein, with the term Creditors as used herein is intended to include creditors of Assignor and affiliates, subsidiaries and parents of such creditors ) and is unable to pay its debts in full, and has decided to discontinue its business, and is desirous of transferring its property and claims to an assignee for the benefit of the Creditors so that the property and claims so transferred may be expeditiously liquidated and the proceeds thereof be distributed fairly to and amongst the Creditors in conformance with the distribution provisions included in this Assignment agreement and at law;

WHEREAS, because the Assignor and its principal is dedicated to voluntarily maximizing the monetary recoveries for the Creditors, is working together with the Assignee and the Creditors to recover funds, is providing fulsome information to a forensic accounting firm, and for the sole purpose of assisting the achievement of that goal, the Assignor desires to transfer its and his claims, causes, and certain property to Assignee for the benefit of the Creditors so that the property so transferred may be expeditiously liquidated and the proceeds thereof be fairly distributed to and amongst the Creditors, for the benefit of the Creditors; and

NOW, THEREFORE, in consideration of Assignor's existing indebtedness to the Creditors, the covenants and agreements to be performed by Assignee, the forbearance of Assignor's Creditors, and other consideration, receipt of which is hereby acknowledged, it is hereby **AGREED:**

1.    **TRANSFER OF ASSETS:** Assignor hereby assigns, grants, conveys, transfers and sets over to Assignee all right, title and interest in all of the property and claims of the Assignor. Assignor agrees to endorse any refund checks relating to the prior operations of Assignor's business and to deliver such checks immediately to Assignee, except in the case of any of the foregoing, solely to the extent the same is prohibited from transfer or assignment by the terms of any applicable contract or by operation of law. All of the assets assigned by this Assignment shall be referred to herein as the "Assigned Assets." Notwithstanding the above, the Assignee shall ensure that any agreement to sell the Assignor's assets contains a provision requiring any purchaser to provide the Assignor with such reasonable access in order to effect this Assignment. The assignment of the Assigned Assets by Assignor to Assignee hereunder shall be subject to all

1

docs-100777363.1

properly perfected liens encumbering any of the Assigned Assets existing as of the date of this Assignment.

2.      **FURTHER ASSIGNMENT:** The Assignee will further assign all right, title and interest in the present Assignment, to a new entity created for the sole purpose of effecting all actions contemplated in the present Assignment, and which entity will remain subject to all the terms and conditions herein. The further Assignment will be in substantially the identical form as the present Assignment (except as to the name of the Assignee) and will be put into place within two weeks from the date hereof

3.      **LEASES AND LEASEHOLD INTERESTS.** This Assignment includes all leases and leasehold interests in any asset of the Assignor; however, should the Assignee determine that said lease or leasehold interest is of no value to the estate, then said interest is thereby relinquished without further liability or obligation by the Assignee.

4.      **DELIVERY OF DOCUMENTS, ENDORSEMENTS, COOPERATION, AND INFORMATION SHARING.** Assignor agrees, provided it does not violate applicable privilege protections, to (i) deliver all relevant existing books and records to Financial Investigation Services ("FSI"), subject to Kovel Agreement, which FSI may then, in its sole discretion, share with the Assignee, (ii) execute and deliver all additional and reasonably necessary documents promptly upon request by Assignee, (iii) endorse all indicia of ownership, where required by Assignee in order to complete the transfer of all Assigned Assets to Assignee as intended by this Assignment, and (iv) continue to cooperate with Assignee's efforts to collect all recoverable assets and receivables for the benefit of Creditors and to assist in determining the legitimacy and amounts of Creditors' claims, including, without limitation, editing and providing sworn affidavits and appearing as a witness in connection with any proceedings involving Creditors or the Assignees' or Creditors' attempts to recover assets. Assignee may share with the Creditors who sign the Joinder within five business days of the effective date hereof information Assignee receives from FSI, but only after first providing Assignor and its counsel five days' advance notice (email suffices). Nothing herein shall be construed as a waiver of any of Assignor's constitutional rights, including the right against self-incrimination and the right to be represented by personal counsel of Assignor's choosing. It is the intention of the parties that, subject at all times to any and all applicable privileges, the Assignee shall be provided with all necessary information and documents to maximize collections on behalf of the assignment estate created hereunder.

5.      **COMMENCEMENT OF PROCEEDING.** Five business days after the full execution and delivery of this Assignment, such that Creditors wishing to sign the Joinder have the opportunity to do so, Assignee shall promptly commence a proceeding (the "Proceeding") in the Supreme Court of the State of New York, County of New York (the "Court") under Article 2 of the New York Debtor and Creditor Law in furtherance of the Assignment, subject to the terms of Paragraph 15 hereof.

6.      **FIRST INTERIM DISTRIBUTION.** Within ten business days after the first $10,000,000 in proceeds from the operation of and liquidation of Assignor's business and assets have been collected by the Assignee, the Assignee shall file an application to the Court for approval of an initial interim distribution ("First Interim Distribution"), to be paid immediately and in the following order, as follows: (1) up to $1,500,000 in payments to reimburse Assignee for all costs

2

docs-100777363.1

FILED: NEW YORK COUNTY CLERK 06/20/2025 03:40 PM
NYSCEF DOC. NO. 4

INDEX NO. 157933/2025
RECEIVED NYSCEF: 06/20/2025

26-22383-shl    Doc 49-1    Filed 05/18/26    Entered 05/18/26 11:48:39    Exhibit A -
Assignment Agreement    Pg 4 of 27

and expenses incidental to the administration of the Assignment estate, including the payment of a reasonable compensation, as defined as Section 2 of the Debtor Creditor law, to the Assignee, as that term is hereinafter defined, and the payment of reasonable compensation for the services of attorneys for the Assignee, accountants to the Assignee, and any other professionals the Assignee deems necessary to properly administer the Assignment estate; (2) $1,000,000 in payments to the Assignor's legal counsel for services related to the making of and administration of the Assignment and the Assignor's assistance herewith; (3) any then-outstanding payments due to Financial Investigation Services, a forensic accounting firm retained by Assignor's counsel; and (4) payments to the Real Estate Clients, as defined herein (except for any relatives of Mark Nussbaum or Samuel Lowinger).

7.    **POWERS AND DUTIES OF ASSIGNEE.** From the date hereof, Assignee shall have all powers necessary to marshal and liquidate the estate, subject to Court approval, including but not limited to:

a.    The exclusive right to collect any and all assets owned directly or indirectly by Assignor, including but not limited to, accounts receivable and obligations owing to Assignor, and causes of action. The Assignor shall provide an updated accounting as to all amounts collected from the Assignor's accounts receivable, together with proof of payments to the bona fide clients of Assignor who/that had escrow monies deposited with Assignor for the use in or resulting from a transaction for which Assignor performed legal work, a list of whom shall be provided to the Assignee under separate cover at the time this Assignment is fully executed ("Real Estate Clients");

b.    To sell or otherwise dispose of all tangible and intangible personal property of the Assignor, including but not limited to all of Assignor's equipment, inventory, causes or choses in action and general intangibles in such manner as Assignee deems best. Assignee shall have the power to execute any and all documents necessary to effectuate the sale of this property and to convey title to same. In this regard, Assignee shall have the power to employ an auctioneer to appraise said assets and to conduct any public or private sale of the assets and to advertise said sale in such manner as Assignee deems best. Assignee shall have the power to execute bills of sale and any other such documents necessary to convey right, title and interest in and to Assignor's property to any bona fide buyer.

c.    To employ attorneys (including Anderson Kill P.C.) (subject to all applicable conflicts of interest rules), accountants and any other additional personnel to whatever extent may be necessary to administer the assets and claims of the Assignment estate and to assist in the preparation and filing of any and all State, County or Federal Tax Returns as required.

d.    To require all of Assignor's Creditors to whom any balance allegedly is owing to submit verified statements to Assignee of said claim(s), with all of the Creditors who executed the Joinder within five business days of the effective date hereof agreeing to submit such a verified statement describing their claim within 30 days of the filing of the Proceeding, which statements shall be provided to Assignor and all Creditors who have executed the Joinder.

e.    To settle, only with Court approval, any and all claims against or in favor of Assignor. In connection with the determination of the allowability and amount of Claims of

3

Creditors against Assignor, such claims shall be determined by computing the amount of funds advanced by such Creditor to Assignor, as determined by Assignee, less the amount of funds paid by Assignor or persons working in concert with Assignor (including any payments made to any Creditor by anyone who did business or had transactions with Assignor) to such Creditor without consideration for profit or interest earned. In any motion filed by the Assignee for approval of the settlement of Claims hereunder, Assignee shall provide adequate disclosure of how the amounts in which the Claims were computed. All intercreditor disputes, including, but not limited to, disputes about the amount and priority of Creditor's Claims shall be resolved by binding arbitration before the Beth Din of America in accordance with its Rules and Procedures and respecting the applicable secular laws which governed the relationship between Assignor, Assignee, Creditors and potential defendants in claims to be brought by Assignee based on, among other things, the "law of the land" or the "custom of the marketplace." Any and all determinations regarding Assignor's and/or any and all Creditors' claims, rights, or priority are subject to arbitration before the Beth Din of America and the intercreditor process set forth herein (where the position of Assignee shall not be entitled to any deference). Creditors who sign the Joinder of this Agreement within five business days of the effective date hereof will be provided with an opportunity to challenge the settlement proposed by Assignee in the Beth Din of America only (where the position of Assignee shall not be entitled to any deference) and waive any right to such a challenge in secular Court as provided for in Section 2 of the Debtor Creditor law. Discovery shall be available in all proceedings before the Beth Din of America and documents subject to confidentiality may be used in the Beth Din of America proceeding, but only provided that such documents remain confidential and are used only in connection with such Beth Din of America proceeding. The Arbitration Agreement governing such proceedings before the Beth Din of America is attached hereto as **Exhibit 2**. In any proceeding contemplated by this Agreement, Mark Nussbaum shall make himself reasonably available to testify, and he shall have the right to be represented by personal counsel of his choosing.

f.    To sue or be sued (not in the Assignee's personal capacity), and to prosecute or defend any claim or claims of any nature whatsoever existing in favor of Assignor or conferred on the Assignee pursuant to Section 6 and 6-a of the New York Debtor and Creditor Law, including but not limited to preference and fraudulent transfer claims. The Assignee shall be obligated to defend, on Assignor's behalf, all lawsuits and legal proceedings against the Assignor with respect to monies claim to be owed by the Assignor to any of Assignor's creditors.

g.    To open bank accounts in the name of the Assignee or its nominees or agents and to deposit assigned assets or the proceeds thereof in such bank accounts and to draw checks thereon and with the further power and authority to do such acts and execute such papers and documents in connection with this Assignment as Assignee may deem necessary or advisable.

h.    To conduct the business of the Assignor, should the Assignee deem such operation proper.

i.    To apply the net proceeds arising from the operation of and liquidation of Assignor's business and assets, following the First Interim Distribution, in the following amounts as to amounts only, as follows:

docs-100777363.1

FILED: NEW YORK COUNTY CLERK 06/20/2025 03:40 PM
INDEX NO. 157933/2025
NYSCEF DOC. NO. 4
RECEIVED NYSCEF: 06/20/2025

26-22383-shl    Doc 49-1    Filed 05/18/26    Entered 05/18/26 11:48:39    Exhibit A -
Assignment Agreement    Pg 6 of 27

(1)    FIRST, to deduct all sums which Assignee may at its option pay for the discharge of any lien on any of said property and any indebtedness which under the law is entitled to priority of payment and to reimburse Assignee as to all costs advanced by the Assignee or any third party for the preservation of the Assignment estate's assets, including the maintenance and insurance of said assets and the expenses of any operation.

(2)    SECOND, all costs and expenses incidental to the administration of the Assignment estate, including the payment of a reasonable compensation, as defined as Section 2 of the Debtor Creditor law, to the Assignee, as that term is hereinafter defined, and the payment of reasonable compensation for the services of attorneys for the Assignee, accountants to the Assignee, attorneys to the Assignor for services related to the making of and administration of the Assignment and any other professionals the Assignee deems necessary to properly administer the Assignment estate.

(3)    THIRD, all federal taxes of any nature whatsoever owing as of the date of this Assignment; or other such claim of any federal governmental agency as defined under 31 U.S.C.A. § 3713, including but not limited to federal withholding taxes, federal unemployment taxes and any other federal income, excise, property and employment taxes,

(4)    FOURTH. all state, county and municipality taxes of any nature whatsoever owing as of the date of this Assignment, including but not limited to employment, property and income taxes.

(5)    FIFTH, all monies due employees of the Assignor entitled to priority as may be required under New York law up to any statutory maximum.

(6)    SIXTH, to all of Assignors' creditors.

(7)    SEVENTH, to unsecured Creditors.

All distributions to Creditors shall be, within each class, pro-rata in accordance with the terms of each Creditor's indebtedness, until all such debts are paid in full. No payment shall be made to any creditor whose claim is otherwise disputed until such time as that Creditor's claim is resolved, the Creditor's otherwise pro-rata share of such distribution shall be fully reserved for by the Assignee until such time as the dispute is resolved. To the extent the dispute is resolved in the Assignee's favor, the reserved amount shall be distributed in accordance with this Section 7(i). The Assignee may make interim distributions whenever the Assignee has accumulated sufficient funds to enable it to make a reasonable distribution, but only after the claims presented by Creditors presenting have been allowed or disallowed in accordance with Section 7(i). It is stipulated that if the Beth Din of America rules that certain Creditors have priority over the other Creditors, Assignee may make an interim distribution to such Creditors with priority prior to the resolution of other Creditors whose claims have yet to be resolved. Other than the distributions contemplated in Section 5 above, which shall be made in the ordinary course of business, no distribution shall be in an amount less than $100,000 in the aggregate, except the final distribution. If the assets of the Assignor are insufficient to pay in full all of these claims, then the assets shall be applied pro rata to the payment of each claim according to its respective priority category and as determined by the Assignee, provided that, as set forth above in Section 7(e), any disputes about priority and

5

the amount of claims of creditors shall be resolved by binding arbitration before the Beth Din of America in accordance with its Rules and Procedures and respecting the applicable secular laws which governed the relationship between Assignor, Assignee, Creditors and potential defendants in claims to be brought by Assignee based on, among other things, the "law of the land" or the "custom of the marketplace" and the position of Assignee shall not be entitled to any deference.

(1)    EIGHTH, any monies (distributions) unclaimed by Creditors ninety days after the final distribution to unsecured creditors (if any) or the termination of the administration of the estate created by this Assignment, shall be re-distributed to all known unsecured creditors, being those creditors who cashed their respective dividend checks from the Assignment estate.

(2)    NINTH, the surplus, if any, of the Assignment estate funds, when all debts of the Assignor shall have been paid in full, shall be paid and transferred to the holders of the equity of said Assignor, as per the list of equity holders provided with the making of this Assignment.

j.    To do and perform any and all other acts necessary and proper for the liquidation or other disposition of the assets, including but not limited to abandonment, and the distribution of the proceeds derived therefrom to Assignor's Creditors.

k.    To dissolve the Assignor entities and administer the winding up of the Assignor entities.

Notwithstanding anything to the contrary herein, all grants of authority to the Assignee hereunder are subject to all limitations imposed by applicable law and the agreement of the parties as to what information of the Assignor that the Assignee can disseminate.

8.    **RIGHTS OF CREDITORS.** Nothing herein modifies any rights and remedies of the Creditors against any surety or sureties for the Assignor and nothing herein shall prevent the Creditors or any of them from suing any third parties who may be liable to any of the Creditors for all or any part of their claims against the Assignor, or from enforcing or otherwise obtaining the full benefit of any mortgage, charge, pledge, lien, or other security which they now hold on any property of the Assignor ("Creditor Third Party Claims"). However, other Creditors may initiate arbitration before the Beth Din of America against Creditors with such Creditor Third Party Claims to adjudicate priority, amount and the propriety or efficacy of such claims as part of the intercreditor process set forth in Section 7(e) above. In addition, all Creditors with claims, and all such third parties or persons who may be liable to any of the Creditors for all or any part of their claims against the Assignor, will have an option to have such claims adjudicated in binding arbitration before the Beth Din of America as set forth in an arbitration agreement. Assignee will provide bi-monthly reports of its activities pursuing collections and dealing with claims of Creditors to the Assignor and to the Creditors who execute the Joinder, which reports shall remain confidential and are intended to provide transparency as to the activities of the Assignee in connection with this Assignment. All written communications to or from Assignee and the other Creditors who execute the joinder (or their counsel) shall copy the other Creditors who execute the Joinder (or their counsel) and Assignor. Assignee will provide to the Assignor and to the Creditors who execute the Joinder all books and records and financial information received from

6

docs-100777363.1

parties who received funds from Assignor, including, but not limited to, persons and entities that worked in concert with Assignor and related parties or their/its counsel or financial representatives, and the Creditors will maintain its confidentiality pursuant to any confidentiality agreements, and such information may be used in connection with any arbitration proceedings before the Beth Din of America hereunder (including as set forth in Section 7(e) above).

9. **LIABILITY OF ASSIGNEE.** It is understood and agreed that neither the Assignee nor any of its employees, officers, agents, attorneys, professionals or representatives will assume any personal liability or responsibility for any of its acts as Assignee herein, but its obligation shall be limited to the performance of the terms and conditions of the Assignment in good faith and in the exercise of its best business judgment. The Assignee shall be indemnified by the Assignment estate for any claims brought by any party against the Assignee for any of its acts as Assignee. Such right of indemnification is specifically void in the event the actions of Assignee are determined by a court or tribunal of competent jurisdiction to have been taken in bad faith or grossly negligent. In no event shall Assignee have any right of indemnification, reimbursement, contribution or similar right against any other person or entity (*i.e.,* other than the Assignment estate) in connection with the performance of Assignee's duties hereunder. For the avoidance of doubt, Assignee expressly does not assume any personal liability.

10. **RELIANCE.** The Assignee may conclusively rely and shall be protected in acting upon on the truth, accuracy, and completeness of any statement, certificate, opinion, resolution, instrument, report, notice, request, consent, order, or other paper or document furnished to the Assignee by the Assignor or its directors, managers, employees, officers, agents, or representatives. The Assignee may conclusively rely and shall be protected in acting upon the truth, accuracy, and completeness of any statement, certificate, opinion, resolution, instrument, report, notice, request, consent, order, or other paper or document believed by it to be genuine and to have been properly signed or presented.

11. **WARRANTIES OF ASSIGNOR.** Assignor hereby warrants as follows:

The list of Creditors provided contemporaneously herewith is complete and correct as reflected by the books and records of the Assignor, as to the names of Assignor's creditors, their addresses, and the amounts of their anticipated claims in the Assignment proceedings, all to the best of Assignor's knowledge.

Assignor, through its officers and directors, shall perform any and all acts reasonably necessary and proper to assist the Assignee in its orderly liquidation of the Assignor's assets, the collection of any and all monies owing the Assignor, and in the distribution of said monies and proceeds of asset sales to the Creditors, and in no event shall they incur any liability to Assignee or the estate in connection with such assistance, unless such individual's actions are determined by a court or tribunal of competent jurisdiction to have been taken in bad faith or the product of fraud or willful misconduct.

12. **POWER OF ATTORNEY.** The Assignor, by this Assignment, hereby grants the Assignee a general power of attorney only with respect to the matters addressed in this Assignment, which power of attorney specifically includes the right of the Assignee to prosecute, and the duty of the Assignee to defend, any action or legal proceeding in the name of the Assignor as Attorney-

docs-100777363.1

in-Fact. Further, on the date the Assignment is accepted by the Assignee, the Assignee shall succeed to all of the rights and privileges of the Assignor, including (without limitation) any attorney-client privilege Assignor had with its former clients to the extent not already waived or broken, in respect to any potential or actual claims, cases, controversies, or causes of action, and shall be deemed to be a representative of the Assignor with respect to all such potential or actual claims, cases, controversies, or causes of action, whether brought by or against the Assignor.

13. **ACCEPTANCE BY ASSIGNEE.** By execution of this Assignment, the Assignee does hereby accept the estate herein created and agrees to faithfully perform its duties according to the best of the Assignee's skill, knowledge and ability and for the benefit of all of Assignor's creditors, whether or not party to this Assignment. The reasonable expenses, costs and disbursements incurred in connection with the execution of this assignment, together with any commissions or allowances to which the Assignee may be entitled for his services are expressly permitted to be paid and discharged in full. The commissions or allowances to which the Assignee may be entitled for his services under New York law are deemed to be reasonable compensation for such services. Assignee shall be permitted to receive an advance deposit of $100,000 (not from Assignor) immediately to be charged against his reasonable compensation, as provided for in Article 2 of the debtor creditor law, subject to Court approval, and that, in the event such advance deposit is determined to be inappropriate as interim compensation, the Assignee will return such sums without effect to the Assignment. The Assignee shall be entitled to make an application to the Court for reasonable compensation pursuant to NY Debt & Cred L § 21.

14. **RESIGNATION BY ASSIGNEE.** The Assignee may resign and be discharged from its duties hereunder at any time; provided that such resignation shall not become effective until a successor assignee has been appointed by the Assignee with the seventy five percent approval of the creditors pro rata based on the size of their claims and the Assignor and the majority of the Creditors who have executed the Joinder to this Agreement within five business days of the effective date hereof, and, in the event, the Creditors do not agree on such successor, the issue will be presented to the Beth Din of America, which shall determine such successor, and such successor has accepted its appointment in writing delivered to the Assignee and agreed to be bound by this Agreement. The Assignor shall have the right to be heard concerning the Assignor's replacement. Thereupon, such successor assignee shall, without any further act other than signing a joinder to this Assignment, become vested with all of the estates, properties, rights, powers, trusts, and duties of its predecessor in connection with the Assignment with like effect as if originally named therein, but the Assignee shall nevertheless, when requested in writing by the successor assignee, execute and deliver an instrument or instruments conveying and transferring to such successor assignee all of the estates, properties, rights, powers, and trusts of the Assignee in connection with the Assignment and shall duly assign, transfer, and deliver to such successor assignee all property and money held by the Assignee hereunder, including any and all unallocated or unused funds for the Assignee's costs, expenses, and compensation.

15. **CONFIDENTIALITY.** The parties, including the Assignor, the Assignee, and the Creditors signing the accompanying Joinder, agree that, other than for purposes of enforcement of this Agreement and Assignment as contemplated herein and except as required by law for the Assignee to fulfill its duties hereunder, they and their agents will not discuss, publicize, or disclose to any other person or entity, directly or indirectly, the existence of this Assignment (including the lists, schedules, exhibits, or other documents exchanged hereunder), the terms hereof, or the

8

circumstances given rise to this Assignment, other than their attorneys, accountants, or financial advisors. The parties agree and acknowledge that the confidentiality obligations set forth herein are material considerations for the Assignor to enter into this Assignment and that the Assignor would not have entered into this Assignment without such confidentiality obligations, and that any breach of the confidentiality obligations will be a material breach of this Assignment. If any party to this Assignment, or any of their attorneys, receives a subpoena commanding the disclosure of any of the terms of this Assignment, the receiving party shall notify and provide a copy of the subpoena to the Assignor and the Assignee within two business days of receipt of the subpoena.

16.    **COVENANT NOT TO SUE.** For as long as this Assignment remains in effect, each of the Creditors executing the Joinder to this Assignment covenants and agrees not to commence any court or arbitration proceeding or bring or promote any action (including with any regulatory or oversight body or governmental agency) against the Assignor and its principals (and to the extent already commenced, such Creditor shall discontinue without prejudice the action or proceeding promptly after signing the Joinder). Nothing in this Assignment shall be construed as precluding Creditors or Assignee from (i) cooperating fully with any regulatory or oversight body or governmental agency, in any proceeding initiated by such body or agency or at such body's or agency's request; or (ii) making a claim to Assignor's malpractice insurance carrier, but only to the extent such insurance claim does not require the filing of any legal or regulatory complaint, charge, or proceeding. In the event Assignor becomes a debtor in any bankruptcy proceeding, which the Assignor expressly retains the right to cause by the filing of a bankruptcy petition, the Assignor shall have the option to terminate this Assignment (in addition to any termination that may be effectuated by operation of law). The covenant not to sue Assignor shall not apply to arbitration proceedings to determine the Creditors' rights relative to one another, and in any such proceeding the Assignor may be made a nominal party with the right to be represented by personal counsel of the Assignor's choosing.

17.    **GOVERNING LAW**. This Assignment shall be governed by and construed in accordance with the Laws of the State of New York applicable to a contract executed and performed in such State, without giving effect to the conflicts of laws principles thereof. This Assignment, as well as all transactions intended to be addressed by this Assignment, including payments made by Assignor or persons working in concert with Assignor (such as any payments made by anyone who did business or had transactions with Assignor) to any Creditor, shall be governed by New York law and, except if otherwise in conflict with this Assignment, Sections 544, 547, 548 and 550 of the United States Bankruptcy Code, and the rights of the Creditors hereunder shall be treated as if a bankruptcy petition was filed by Assignor on January 7, 2025.

18.    **SEVERABILITY**. The provisions of this Assignment shall be deemed severable and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof. If any provision or clause of this Agreement, or portion thereof, shall be held by any court or other tribunal of competent jurisdiction to be illegal, void, or unenforceable in such jurisdiction, the remainder of such provision shall not be thereby affected and shall be given full effect, without regard to the invalid portion.

19.    **COUNTERPARTS**. This Assignment may be executed in any number of counterparts, each of which will be deemed an original, but all of which together will constitute

9

one and the same instrument. This Assignment shall become effective only upon the execution of all parties hereto and when released from escrow, if applicable.

**IN WITNESS WHEREOF,** the parties have hereunto set their hands the day and year first above written:

**ASSIGNEE**

By: _[signature]_
Name: Sheldon Eisenberger, Esq.
Title: _assignee_

STATE OF NEW YORK          )
                          ):ss.:
COUNTY OF NEW YORK         )

On ~~May~~ _June 16th_, 2025, before me, the undersigned, a Notary Public in and for said State, personally appeared Sheldon Eisenberger, Esq. personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same, and that by his signature on the instrument, the individual executed the instrument.

**GIOVANNA LAZZARA**
**Notary Public, State of New York**
**No. 01LA6230492**
**Qualified in Kings County**
**Commission Expires**
**November 01, 2026**

_[signature]_
Signature and Office of individual
taking acknowledgment

**NUSSBAUM LOWINGER LLP**

By: _[signature]_
Name: Mark J. Nussbaum
Title: Partner

STATE OF NEW YORK          )
            _New York_     ):ss.:
COUNTY OF ~~ROCKLAND~~     )

On ~~May~~ _June 16th_, 2025, before me, the undersigned, a Notary Public in and for said State, personally appeared Mark J. Nussbaum personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same, and that by his signature on the instrument, the individual executed the instrument.

**GIOVANNA LAZZARA**
**Notary Public, State of New York**
**No. 01LA6230492**
**Qualified in Kings County**
**Commission Expires**
**November 01, 2026**

_[signature]_
Signature and Office of individual
taking acknowledgment

10

docs-100777363.1

26-22383-shl    Doc 49-1    Filed 05/18/26    Entered 05/18/26 11:48:39    Exhibit A -
Assignment Agreement    Pg 12 of 27

**MARK J NUSSBAUM &
ASSOCIATES PLLC**

By: _____
Name: Mark J. Nussbaum
Title: Partner

STATE OF NEW YORK        )
_New York_              ):ss.:
COUNTY OF ROCKLAND       )

On May __, 2025, before me, the undersigned, a Notary Public in and for said State, personally appeared Mark J. Nussbaum personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same, and that by his signature on the instrument, the individual executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

GIOVANNA LAZZARA
Notary Public, State of New York
No. 01LA6230492
Qualified in Kings County
Commission Expires
November 01, 2026

**AS TO PARAGRAPH 7.e**

By: _____
Name: Mark J. Nussbaum

11

docs-100777363.1

## RESOLUTION AUTHORIZING CORPORATION OR LIMITED LIABILITY COMPANY TO EXECUTE AND DELIVER GENERAL ASSIGNMENT

WHEREAS, this corporation or limited liability company is insolvent and unable to pay its debts and it is to the best interest of this corporation or limited liability company and its Creditors that insolvency proceedings be taken with respect to the property and affairs of this corporation or limited liability company, so as to insure just and proper payment of its debts and distribution of its property,

NOW, THEREFORE, be it

RESOLVED, that this corporation or limited liability company shall execute and deliver a general assignment for the benefit of Creditors pursuant to the Debtor & Creditor Law of the State of New York, and be it

FURTHER RESOLVED, that the President and Secretary of this corporation or limited liability company, or either of them, be and hereby are authorized and directed to make, execute and deliver a general assignment for the benefit of its Creditors pursuant to the Debtor & Creditor Law of the State of New York, to SHELDON EISENBERGER OR ENTITY, that the said officers take such other and further proceedings with respect thereto, and execute, deliver and acknowledge all papers, documents and instruments with the corporate seal affixed thereto and to do all other and further acts in furtherance thereof as may be necessary or proper in connection therewith.

IN WITNESS WHEREOF, we have hereunto subscribed our names and affixed the seal of said corporation this /5 day of June, 2025

Mark J. Nussbaum, Partner

12

docs-100777363.1

FILED: NEW YORK COUNTY CLERK 06/20/2025 03:40 PM
INDEX NO. 157933/2025
NYSCEF DOC. NO. 4
RECEIVED NYSCEF: 06/20/2025

26-22383-shl    Doc 49-1    Filed 05/18/26    Entered 05/18/26 11:48:39    Exhibit A -
Assignment Agreement    Pg 14 of 27

## STATEMENT OF PARTNERS' CONSENT TO GENERAL ASSIGNMENT
## BY PARTNERSHIP

The several partners of the aforesaid partnership, the assignor herein, other than the undersigned partner executing these presents on behalf of the said assignor, have each heretofore given their express consent in writing to the making of this general assignment and to the execution and delivery of these presents by the undersigned partner on behalf of the said assignor, such consents being included in the books, papers, and records of the said assignor to be delivered herewith to the aforesaid assignee (or, being appended hereto as Exhibits _ inclusive).

_____
    Signatory


_____

docs-100777363.1

**Exhibit 1**

FILED: NEW YORK COUNTY CLERK 06/20/2025 03:40 PM
INDEX NO. 157933/2025
NYSCEF DOC. NO. 4
RECEIVED NYSCEF: 06/20/2025

26-22383-shl   Doc 49-1   Filed 05/18/26   Entered 05/18/26 11:48:39   Exhibit A -
Assignment Agreement    Pg 16 of 27

## JOINDER TO ASSIGNMENT FOR THE BENEFIT OF CREDITORS

This Joinder ("Joinder Agreement") to General Assignment for the Benefit of Creditors of Nussbaum Lowinger LLP and Mark J Nussbaum and Associates PLLC ("ABC Agreement"), dated May __, 2025, is by and between Sheldon Eisenberger (or an entity to be firmed by him) ("Assignee"); Nussbaum Lowinger LLP and Mark J Nussbaum and Associates PLLC (collectively, "Assignor"); and the undersigned purported creditor of the Assignor ("Creditor"). Capitalized terms not defined herein shall have the same meaning as in the ABC Agreement.

## RECITALS

WHEREAS, Creditor represents and warrants that he or it is a creditor of the Assignor; and

WHEREAS, because the Assignor is dedicated to voluntarily maximizing the monetary recoveries for Assignor's creditors, and for the sole purpose of assisting the achievement of that goal, the Assignor has transferred its and his claims, causes, and property to Assignee for the benefit of the Creditors so that the property so transferred may be expeditiously liquidated and the proceeds thereof be fairly distributed to and amongst the Creditors, for the benefit of the Creditors; and

WHEREAS, Creditor has received a copy of the ABC Agreement, has had sufficient opportunity to review the ABC Agreement and consult legal counsel to answer any questions pertaining to the ABC Agreement, and intends to be bound in all respects by and with the ABC Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the promises and mutual covenants set forth herein and in the ABC Agreement, and for other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties to this Joinder Agreement hereby agree as follows:

1. By executing this Joinder Agreement, Creditor (including Creditor's entities, affiliates, subsidiaries, and agents that might otherwise be entitled to assert a claim against the Assignor for any reason) agrees that Creditor shall, by execution of this Joinder Agreement and without any further notice or action of any kind, become a party to the ABC Agreement and thereby be irrevocably bound by its provisions to the same extent as if Creditor had been a direct signatory thereto. Creditor represents and warrants that he/it has not assigned to any third party any claim or cause that he/it might have as against Assignor. Creditor shall support and cooperate with the process that flows from the ABC, including submitting to Assignee reasonable evidence that supports its claim and allowing the Assignee to audit any such claim. Creditor agrees to provide to the Assignee or the Assignee's representative any evidence of any repayment by the Assignor to Creditor. Creditor hereby consents for the Assignee to join Creditor as a claimant/plaintiff in any civil action and/or beth din arbitration proceeding that Assignee may bring against any party that may owe monies or damages to the ABC estate.

2. Other than agreements between the Assignor and the Creditor (or any creditor of the Assignor) that would provide the Assignee with a source of recovery for the benefit of the

ABC estate, this Joinder Agreement and the ABC Agreement constitute the entire agreement between the parties with respect to the subject matter contained herein and supersede any and all prior agreements and understandings between them with respect to such subject matter. This Joinder Agreement may not be modified, amended, altered, or supplemented except in writing signed by all parties hereto. In the event the Assignment is terminated for any reason, this Joinder Agreement shall likewise be terminated.

3. This Joinder Agreement shall be binding upon and inure to the benefit of the parties hereto. No party hereto may assign this Joinder Agreement or any of his or its right, interests, or obligations hereunder without the consent of the other parties hereto.

4. The parties agree that if any provision of this Joinder Agreement shall be deemed invalid or inoperative, this Joinder Agreement shall be construed with the invalid or inoperative provision deleted, and the rights and obligations of the parties shall be enforced accordingly.

5. This Joinder Agreement may be executed in counterparts, all of which shall be considered one and the same agreement. A facsimile, .pdf, or other electronic signature of this Joinder Agreement shall be as effective as an original.

[Signatures follow]

IN WITNESS WHEREOF, the undersigned have caused this Joinder Agreement to be effective as of the date first written above.

**CREDITOR:**

Name: _____
Address: _____
Email: _____
Date: _____

**ACCEPTED:**

ASSIGNEE

By:_____
    Sheldon Eisenberger

**Exhibit 2**

## ARBITRATION AGREEMENT

THIS ARBITRATION AGREEMENT (this "**Agreement**") is made and effective as of _____, 2025 by and among Claimants (defined below) and Respondents (defined below) that sign this Agreement (each a "**Party**" and collectively the "**Parties**").

### RECITALS

A.    Claimants, _____ (collectively, "**Claimants**") are in a dispute with Respondents, _____ (collectively, "**Respondents**"), concerning _____ (collectively, the "**Claims**");

B.    Respondents _____ are additionally in a dispute with Claimants, _____, concerning _____ (collectively, the "**Counterclaims**");

C.    The Parties desire to submit the Claims and Counterclaims to final and binding arbitration before the _____(the "**Bais Din**"), in accordance with the terms and conditions of this Agreement.

**NOW, THEREFORE,** in consideration of the terms and conditions set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally and *halachically* bound, hereby acknowledge and agree as follows:

### TERMS AND CONDITIONS

1.    **Execution and Authority.**

(a)    Execution of Agreement. Each Party shall execute this Agreement by initialing each page of this Agreement in the space provided in the footer, by signing the space provided for signature on the Party Signature Page below, and by providing responses to the questions set forth in the Party Signature Page. Each Party represents and warrants that its responses given to the questions set forth in the Party Signature Page are true and accurate to the best of the Party's knowledge, information, and belief. Each Party shall submit its fully executed version of the Agreement, together with any documents requested in the Party Signature Page, to the Bais Din in accordance with submission instructions provided by the Bais Din.

(b)    Execution of Bais Din's Hebrew *Shtar Beirurin.* In addition to executing this Agreement, each Party shall execute the standard form Hebrew-language *shtar beirurin* (שטר ברורין) of the Bais Din in the form attached as Exhibit 1 (the "Form *Shtar*"). To the extent any provision of this Agreement and the Form *Shtar* conflict, the provisions of this Agreement shall prevail.

(c)(b)    Authority. Each Party executing this Agreement represents and warrants that it has the full power and authority to enter into this Agreement and has obtained any and all necessary or appropriate consents or approvals to enter into this Agreement. Each individual

- 1 -

4896-3821-5449, v. 2

*Initials of Signing Party* _____

**FILED: NEW YORK COUNTY CLERK 06/20/2025 03:40 PM** INDEX NO. 157933/2025
NYSCEF DOC. NO. 4 RECEIVED NYSCEF: 06/20/2025

26-22383-shl    Doc 49-1    Filed 05/18/26    Entered 05/18/26 11:48:39    Exhibit A -
Assignment Agreement    Pg 20 of 27

executing this Agreement on behalf of a Party that is a corporate or other entity represents and warrants that he or she has the full power and authority to represent said entity and to enter into this Agreement on its behalf, and has obtained any and all necessary or appropriate consents or approvals to execute this Agreement on behalf of said entity.

2.    **The Arbitration.**

(a)    Submission to Arbitration. The Parties hereby agree to submit the Claims and Counterclaims to final and binding arbitration before the Bais Din (the "**Arbitration**"). The Parties further agree that any and all disputes, claims, or controversies relating to the enforceability, formation, conscionability, or validity of this Agreement or the arbitrability of any disputes arising hereunder (collectively "**Ancillary Disputes**") shall be submitted to and exclusively resolved by the Bais Din.

(b)    Rulings. Any and all awards, decisions, decrees, rulings, or orders by the Bais Din in the Arbitration of any kind or nature whatsoever, whether intermediate, interim, interlocutory, final, or otherwise (collectively "**Rulings**"), shall be binding on the Parties, fully enforceable against each of them, and may each be entered, confirmed, and enforced in any court of competent jurisdiction. The Parties expressly consent to the jurisdiction of any state or federal court with respect to any action or proceeding brought to enter, confirm, or enforce any of the Rulings issued in the Arbitration. The Parties acknowledge and agree that the Rulings of the Bais Din are final, non-appealable, and not subject to modification absent an express Ruling by the Bais Din.

(c)    Panel of Arbitrators. The Arbitration shall be heard and adjudicated by the Bais Din through a panel of three arbitrators (each an "**Arbitrator**" and collectively the "**Arbitrators**") selected by the Bais Din. If any Arbitrator withdraws, is disqualified from hearing the Arbitration, or is unable to function as an Arbitrator, the Parties agree to accept any new Arbitrator selected by the Bais Din.

(d)    Law Applicable to Arbitration. The Parties agree that the Arbitrators, in their sole and absolute discretion, may issue Rulings and adjudicate the Arbitration based on the application of Jewish law (*din*), compromise or settlement related to Jewish law (*p'shara* or *p'shara krova l'din*), common commercial practices (such as *minhag ha'schorim* or *situmta*), or a combination thereof. In accordance with Jewish law (*halacha*), the Bais Din may issue Rulings without disclosing their reasoning.

(e)    Seat of Arbitration. The seat of the Arbitration shall principally be at the offices of the Bais Din in _____ and parties may participate by video such as Zoom or Microsoft Teams. Notwithstanding the foregoing, the Arbitrators may, in their sole and absolute discretion, change or relocate the seat of the Arbitration, and may hold hearings in locations other than the seat of the Arbitration, in order to facilitate the fair, just, and complete administration and adjudication of the Arbitration; including, but not limited to, for the purposes of holding hearings in other locations and subpoenaing non-Parties for testimony and/or the production of documents at such hearings.

- 2 -

4896-3821-5449, v. 2

_____
*Initials of Signing Party*

(f)    <u>Representation by Counsel.</u> The Parties have the right to be represented by counsel ~~or rabbinic advisors~~ in the Arbitration or may elect to proceed without any such representation. The Parties agree that multiple Parties may use the same counsel ~~or rabbinic advisor~~ without creating a conflict of interest and further agree that to the extent any such use of the same counsel ~~or rabbinic advisor~~ creates a conflict of interest, the affected Parties hereby waive such conflict.

(g)    <u>Hearings and Scheduled Proceedings.</u> The Parties acknowledge they will receive email notice (to the email addresses provided by the Parties to the Bais Din) in advance of Bais Din hearings. In the event a Party does not attend a hearing, the Bais Din will proceed with the hearing regardless. Any Party may elect or nominate another Party to represent it during any proceedings in the Arbitration or may otherwise have legal counsel representation. The Parties further acknowledge that due to the number of Parties, the Bais Din will be unable to accommodate each Party's scheduling constraints.

(h)    <u>Bais Din Fees; Appointment or Retention of Professionals.</u> The Bais Din shall charge fees and costs for services rendered and expenses incurred in connection with the Arbitration in accordance with <u>its customary rates</u>~~the rates set forth in Schedule 1 attached hereto~~. Additionally, the Bais Din may, in their sole and absolute discretion, appoint or retain lawyers, accountants, and/or other investigators, professionals, or consultants to assist in the fair, organized, efficient, and effective administration of the Arbitration. The scope and terms of each such appointment or retention shall be determined by the Arbitrators in their sole and absolute discretion. All fees and expenses incurred by the Bais Din, the Arbitrators, any lawyers, accountants, and/or other investigators or consultants appointed or retained by the Bais Din in connection with the Arbitration shall be paid by the Parties.

(i)    <u>Powers of the Arbitrators.</u> In addition to any other powers conferred upon the Bais Din and the Arbitrators under this Agreement or applicable law, the Parties agree that the Arbitrators may: (i) issue interim or intermediate Rulings as they deem necessary in furtherance of the Arbitration; (ii) establish the procedure to be used for adjudicating the Arbitration; (iii) determine evidentiary issues in any manner they deem appropriate, without application of any formal evidentiary rules; (iv) issue discovery Rulings as they deem appropriate requiring the Parties to produce documents and information, including electronically stored information, to facilitate the broad, truthful, and efficient disclosure of information relating to all claims and defenses asserted in the Arbitration; (v) to the furthest extent permitted under applicable law, issue subpoenas and summonses compelling a Party or non-Party to attend a hearing as a witness and/or to produce documents, records, or other information; (vi) conduct the Arbitration in English or in any other language, while affording the Parties an opportunity to have an interpreter present; (vii) conduct hearings or other proceedings on Sundays or other legal holidays; (viii) hear testimony and evidence and conduct proceedings without the presence of a Party if a Party fails to attend a scheduled hearing; (ix) receive testimony from witnesses without administering an oath; (x) modify or clarify Rulings as they deem necessary or appropriate; (xi) issue an award for reimbursement of attorney's fees or rabbinic advisor fees to a prevailing Party in the Arbitration if the Arbitrators deem such an award appropriate; (xii) issue sanctions or other enforcement Rulings in the event of any Party's non-compliance with any Ruling of the Arbitrators or any Party's failure to comply with the terms of this Agreement; (xiii) issue Rulings to claw-back monies or assets paid or transferred to any Party which the Arbitrators deem should be transferred to other Parties;

- 3 -

4896-3821-5449, v. 2

*Initials of Signing Party* _____

(xiv) issue summonses (a *hazmanah*) to persons or entities not a Party to this Agreement seeking their joinder as parties to the Arbitration.

(j)   Waivers; Indemnification.   By entering into this Agreement, each Party expressly waives: (i) any requirement of formal notice of the time or place of any Arbitration proceeding; (ii) any right to demand the transcription or recording of any Arbitration proceeding; (iii) any right to subpoena any of the Arbitrators as a witness in any suit, action, or proceeding that in any way relates to the Arbitration; and (iv) any claims against the Bais Din or the Arbitrators arising from the conduct of the Arbitration. The Parties agree to fully indemnify and hold harmless the Bais Din and Arbitrators individually and jointly for any expenses, fees, loss, damage, or outlay, including without limitation all attorney fees and court costs which the Bais Din or Arbitrators may at any time sustain, incur, or be exposed to in relation to any subpoenas or suit instituted or threatened against the Bais Din or Arbitrators jointly or individually in connection with the Arbitration.

### 3.   Additional Provisions.

(a)   Interpleader.   In the event a person or entity that is not a Party to this Agreement or the Arbitration asserts any right or claim to any monies or other assets recovered in connection with this Arbitration or this Agreement, the Parties agree that the Bais Din may (i) issue a summons (*hazmanah*) for such claimants to join the Arbitration for purposes of adjudicating their claims to the recovered monies or assets, and/or (ii) commence an interpleader or other appropriate action in a court of competent jurisdiction to resolve any such claims.

> **Commented [RB1]:** In response to the comment, if they refuse to be interpled in the Bais Din, the parties agree to file suit in secular court.

(b)   Binding Effect.   The Parties hereby admit and confess (with the same effect as if verified by the testimony of 100 valid witnesses) that this Agreement was effected and finalized concurrently herewith according to Jewish Law by formal *Kinyan Agav Sudar* and/or other appropriate *Kinyanim*, and were stated and intended to be effective immediately (at the time of the *Kinyan*), all in full accordance with all requisite procedures set out in the Code of Jewish Law (the "Code") and with use of an object valid to effect a *Kinyan sudar*. The *kinyan* was made in a duly constituted Jewish Court of Law (*Bais Din Chashuv*) in accordance with each of the varying procedures required by all of the various Jewish Halachic authorities, so that all Jewish Halachic authorities deem the covenants, waivers, and acquisitions valid, without any *Asmachta* (as defined in the Code) claim of invalidation and without any other claim of invalidation. In addition, the conditions referred to in this Agreement are and were all set in the manner used by *Bnei Gad* and *Bnei Reuven* and in accordance with all other requirements that are set out in the Code for the valid and binding setting of conditions. The *Kinyan* was made for each transfer separately so that the invalidation of one transfer shall not affect the validity of any other transfers. The Parties accept as conclusive and binding the position of any Jewish Halachic authority, even if in the minority or otherwise not generally accepted, that most broadly supports the validity and enforceability of this Agreement and its implied intent.   The Parties admit that the intent and interpretation of this agreement is in a manner consistent with the requirements of *halachah*, and the transactions were effected in a manner that do not constitute a *Kinyan Dvorim* or *Ayn Bo Mamash*. Specifically, all obligations were accepted as a *Hischayvus*, and the Parties became a *Kablan* in regards to any required acts. All this was effected with a valid *Kinyan*. The Parties are agreeing to all provisions of this Agreement knowingly and willingly and without duress or pressure.   The Parties, irrevocably and without time limit, void any declaration of disclaimer

- 4 -

*Initials of Signing Party*

**FILED: NEW YORK COUNTY CLERK 06/20/2025 03:40 PM**
INDEX NO. 157933/2025
NYSCEF DOC. NO. 4
RECEIVED NYSCEF: 06/20/2025

26-22383-shl    Doc 49-1    Filed 05/18/26    Entered 05/18/26 11:48:39    Exhibit A -
Assignment Agreement    Pg 23 of 27

(including any declaration of disclaimer that purports to disclaim the voiding effect of this paragraph, ad infinitum) that it may ever have made regarding this Agreement, and they represent and warrant that they did not make or purport to make any such declaration of disclaimer. The Parties hereby irrevocably void and waive any defense or counterclaim that could void or impair or in any way limit the validity and enforceability of this Agreement. This Agreement is intended to be, and is, binding, consistent with the binding nature of all agreements, documents, obligations, and acquisitions that are properly effected in a Jewish Court of Law in accordance with the laws and rules established by Rabbinical authorities. THIS IS ALL VALID AND IN GOOD STANDING.

(c)    Understanding of this Agreement. THE PARTIES EACH EXPRESSLY ACKNOWLEDGE, UNDERSTAND, AND AGREE THAT, BY SIGNING THIS AGREEMENT, THEY ARE AGREEING THAT THE ARBITRATION BEFORE THE BAIS DIN SHALL BE THE EXCLUSIVE FORUM FOR THE ADJUDICATION OF THE CLAIMS, COUNTERCLAIMS, AND THE ANCILLARY DISPUTES, AND THAT THEY ARE AFFIRMATIVELY WAIVING THEIR RIGHTS TO ANY OTHER RESOLUTION PROCESSES, SUCH AS COURT ACTION WITH OR WITHOUT A JURY, BANKRUPTCY, RECEIVERSHIP, OR OTHER INSOLVENCY ACTION OR PROCEEDING, OR OTHER ARBITRATION PROCEEDING, AND THAT THEY ARE PRECLUDED FROM BRINGING THESE MATTERS BEFORE ANY OTHER COURT, ARBITRAL BODY, OTHER TRIBUNAL, OR GOVERNMENT AGENCY. THE PARTIES FURTHER ACKNOWLEDGE THEY ARE AWARE OF THE LIMITED CIRCUMSTANCES UNDER WHICH AN ARBITRATION AWARD MAY BE CHALLENGED AND AGREE TO THOSE LIMITATIONS. THE PARTIES AGREE THAT THEY ARE ENTERING INTO THIS AGREEMENT FREELY, KNOWINGLY, AND VOLUNTARILY, AFTER DUE THOUGHT AND CONSIDERATION OF ALL THE RELEVANT FACTS, CIRCUMSTANCES, CONSEQUENCES, AND IMPLICATIONS OF ENTERING INTO THIS AGREEMENT. THE PARTIES ACKNOWLEDGE THAT THEY HAVE HAD THE OPPORTUNITY TO CONSULT WITH AN ATTORNEY AND/OR RABBINIC ADVISOR OF THEIR OWN CHOOSING PRIOR TO EXECUTING THIS AGREEMENT. THE PARTIES ACKNOWLEDGE THAT THEY HAVE READ THIS AGREEMENT FULLY, THEY UNDERSTAND IT, AND THEY FREELY, KNOWINGLY, AND VOLUNTARILY AGREE TO ITS TERMS.

(d)    Cooperation. Each Party agrees to faithfully abide by and cooperate with the Rulings issued in the Arbitration and any procedures established by the Bais Din and the Arbitrators.

(e)    Confidentiality. The Parties acknowledge and agree that the proceedings of the Arbitration and all documents and information exchanged or obtained in connection with the Arbitration shall be kept confidential, shall only be used for purposes of the Arbitration, shall only be disclosed to the Bais Din, the Arbitrators, the Parties, and the persons or entities representing or assisting any of the foregoing in connection with the Arbitration, and shall not be disclosed to any other person or entity unless required by law or authorized by all Parties. In the event any Party receives a subpoena, summons, or other legal request or demand for disclosure of documents or information exchanged or obtained in connection with the Arbitration, the receiving Party shall

4896-3821-5449, v. 2

*Initials of Signing Party*

**FILED: NEW YORK COUNTY CLERK 06/20/2025 03:40 PM** INDEX NO. 157933/2025
NYSCEF DOC. NO. 4 RECEIVED NYSCEF: 06/20/2025

26-22383-shl    Doc 49-1    Filed 05/18/26    Entered 05/18/26 11:48:39    Exhibit A -
Assignment Agreement    Pg 24 of 27

promptly provide notice and a copy thereof to the Parties and the Bais Din, and each shall determine whether to seek a protective order or other appropriate relief.

4.    **Interpretative Provisions.**

(a)    Recitals.  The recitals set forth at the beginning of this Agreement are an integral part of, and are hereby fully incorporated into, this Agreement.

(b)    Governing Law.  The Parties acknowledge and agree that this Agreement involves matters of interstate commerce and, therefore, this Agreement shall be governed by the provisions of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the laws arising thereunder (the "**FAA**").  For the avoidance of doubt, in addition to the powers conferred upon the Bais Din and the Arbitrators under this Agreement, the Bais Din and the Arbitrators shall have all the powers afforded to arbitrators under the FAA.  To the extent any part or provision of this Agreement is not governed by the FAA, any such parts or provisions of this Agreement shall be governed by, and construed in accordance with, the laws of the State of _____, without giving effect to any conflicts of laws principles.

(c)    Binding Effect.  This Agreement and all terms, provisions, and covenants contained herein are binding on and shall inure to the benefit of the Parties hereto and their successors and assigns.

(d)    Severability.  In the event that any provision of this Agreement is determined to be illegal or unenforceable by a court of competent jurisdiction, the remainder of this Agreement shall not be affected and shall remain in full force and effect to the fullest extent permitted by law.

(e)    Entire Agreement.  This Agreement contains the entire agreement between the Parties with respect to the subject matter hereof, and all other prior and contemporaneous agreements, representations, warranties, or understandings of the Parties are superseded and merged into this Agreement.

(f)    Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which shall constitute one and the same instrument.  Electronic signatures shall have the same authority, effect, and enforceability as an original signature.

**IN WITNESS WHEREOF, the Parties hereto have affixed their signatures on the pages that follow as of the date set forth in the preamble of this Agreement.**

[SIGNATURES OF THE PARTIES BEGIN ON NEXT PAGE

- 6 -

4896-3821-5449, v. 2

_____
*Initials of Signing Party*

## PARTY SIGNATURE PAGE

**THE UNDERSIGNED PARTY HAS READ THE ARBITRATION AGREEMENT DATED AS OF _____, 2025 AND AGREES TO BE BOUND BY ITS TERMS.**

### PARTY:

_____
Signature

Printed Name of Party: _____

Address: _____

Email Address: _____

Relationship with Respondents (e.g., Guarantor, Agent/Broker, Associate): _____

_____

- 7 -

4896-3821-5449, v. 2

_____
*Initials of Signing Party*

~~SCHEDULE 1~~

~~BAIS DIN RATE SHEET~~

~~[TBD BASED ON BAIS DIN SELECTION]~~

4896-3821-5449, v. 2

*Initials of Signing Party*

FILED: NEW YORK COUNTY CLERK 06/20/2025 03:40 PM

INDEX NO. 157933/2025

NYSCEF DOC. NO. 4

RECEIVED NYSCEF: 06/20/2025

26-22383-shl   Doc 49-1   Filed 05/18/26   Entered 05/18/26 11:48:39   Exhibit A -
Assignment Agreement   Pg 27 of 27

EXHIBIT 1

FORM *SHTAR*

[TBD BASED ON BAIS DIN SELECTION]

[attached]

1